PORTER v. SEARS–ROEBUCK & CO.
Civ. Nos. 1894, 1895.

District Court, N. D. Texas,
Dallas Division.
March 20, 1946.

written in Mede or Persian austerity. The use of the words "available," "reasonable," "similar," and other latitudes show the intention of the law-making power to give the citizen every reasonable opportunity to comply with irritating legislation and regulation. Such legislation and regulation considered, by the Congress, to be justifiable and demanded by the emergency through which the country is passing.

There was to be an opportunity for the purchaser to inspect records of the tradesman's prices prior to the base period date established in the regulation. That was to be shown by "available" records. The regulation and the statute itself, in fixing the base period, allowed the tradesman, if he did not deal in a commodity, prior to the effective date, to make use of such "available" information as he might gather from those who had engaged in the sales of that particular commodity.

The use of the phrase "any person," must be read by the Chancellor in a practicable way. A purchaser might not be able to read and write. A purchaser might be blind. The tradesman was not denied the right to bargain for, buy and sell, any commodity, because of the inability of some persons not to read the history of the price of that particular article.

These illustrations support the thought that the legislation was to be reasonably, sensibly, and practically construed and enforced.

There is an equity maxim which also applies to both of these cases. Equity will not engage in that which is useless. That which has already been done is informative and tends to shed light on what the person may continue to do, and, therefore, also in determining whether it is necessary to restrain that which may be done.

The defendant made use of a so-called control record, which though not intended to be, was an exposure of exclusively the information which the Act and regulation required should be available to the purchaser, and did, in truth, have the information that was required.

When the Act became effective, the defendant added to the available records the phrase "selling price." Before there was any requirement for the use, in this record, of the phrase "selling price," there was placed on the control records the selling price of the particular article for definite times and dates as such selling price fluctuated. Through those old and anterior sell-

Austin S. Dodd and W. R. Herring, both of Dallas, Tex., for plaintiff.

George S. Wright, of Dallas, Tex., for defendant.

ATWELL, District Judge.

These two cases, though involving the same parties, were given two separate trials, the first on March 19th and the second on March 20th. Because the issues are identical and the parties the same, this opinion joins them. The witnesses presented in the two cases were identical. The witness for the plaintiff being an Investigator. The witness for the defendant being an expert employed by the defendant for the purpose of keeping the defendant's business within the terms and provisions of the price control statute and the OPA regulations.

Neither the statute, 50 U.S.C.A.Appendix, § 901 et seq., nor the regulations were

ing prices there was an erasing line drawn, and the present, applicable, "ceiling price," was circled with a red pencil mark, so that the information was readily available. This I hold to be in substantial compliance. In truth, the word "substantial," might be replaced by the word "exact."

In 1895 the identical situation exists and existed. Excerpts taken from the defendant's unit control records by the Investigator show, to a conclusive degree, what the court has just said.

These excerpts contain not only minutiae from the defendant's unit control record, but also observations and conclusions of the Investigator. When the Investigator concluded that there was not an "exact" compliance with the regulations, he wrote this conclusion upon the exhibit. In his testimony he added his conclusions and they were presented to the court in rather astonishing totals as supportive of the right for a recovery by the plaintiff. A careful inspection of these excerpts show that no such aggregate of conclusions is justified.

Added to this inappropriate and unfounded ground for relief for the plaintiff is the general allegation, for treble damages, in many thousands of dollars, that during a certain year "there was a large number of violations and that, therefore, during the year for which suit is brought, it is believed by the plaintiff that the violations were equally as frequent."

Such pleading was attacked by a request from the defendant for a bill of particulars. A satisfactory bill not being forthcoming, and the plaintiff refusing to further amend, 1895 is really for the same sort of relief as 1894.

The store involved in these two suits is a main store at Dallas, three Dallas stores of lesser magnitude, a store at Waco, and a store at Marshall, and the parent store at Chicago.

The testimony indicates that the defendant was solicitously careful to adjust its large merchandising concern to the regulations and the statute. Its large mail order business is not even questioned. Its exact compliance now and for sometime after the statute and regulations had assumed their present settled form is neither criticized nor is there any complaint.

 It is appropriate to call attention to another feature. The word "competitor," is used in a regulation as a potential source for such needed information as the tradesman may desire, if and when he, himself, was not a dealer prior to or on the basic date. The Investigator contends that an independent store, operated by the defendant, under the defendant's system of carrying on places of business in different cities and often in the same city, may not be considered a "competitor." For instance, the main store might not have dealt over its counters with an article on or prior to the base period, but that article may have been sold by some of the so-called independent or auxiliary stores which were operated by the defendant.

The contention of the Investigator is worthless. The regulation, itself, allows the tradesman to use his own sale price, or, to make use of a competitor's sale price. It also allows him, if he sees fit, to ask for a special ruling with reference to the independent stores operated by him.

There is no equity in allowing one to make use of his own ante price and in denying him the use of another store that he operated where he did sell the article, before the price date.

There is no citizen here complaining of the methods of the defendant. The defendant is aware of the fact that its good reputation is one of its chief assets. Its good faith, determined effort, to assist in the enforcement of this statute and regulation is evidenced by securing the services of one highly specializing in this particular sort of work.

The relief sought by the plaintiff in each cause must be denied and the complaints dismissed.